**Richard C. PITTMAN, Appellee,**

v.

**CITY OF TULSA, By and Through its Mayor, Robert J. LaFORTUNE, Civil Service Commission, an administrative agency of the City of Tulsa, by and through its Chairman, Pierce Reynolds, Laurence A. Yeagley, Presiding Judge, of the Municipal Criminal Court of the City of Tulsa, Oklahoma, and Elma M. Camp, Court Clerk of the Municipal Criminal Court of the City of Tulsa, Oklahoma, Appellants.**

**No. 51346.**

Court of Appeals of Oklahoma, Division 2.

Jan. 23, 1979.

Released for Publication by Order of Court of Appeals Feb. 15, 1979.

Paul E. Garrison, Garrison, Pigman, Comstock & Thurston, Tulsa, for appellee.

Imogene Harris, Asst. City Atty., Tulsa, for appellants.

BRIGHTMIRE, Judge.

Appellee Pittman, a civil servant of appellant city of Tulsa, was fired by the presiding judge of the municipal court. He appealed to the civil service commission, and, after a hearing, it revoked the discharge and ordered the employee suspended from performing his municipal duties for six months without pay. Pittman appealed again—this time to the district court. After reviewing the record, the judge reversed the commission's decision without remanding the matter back to that body for a new hearing.[1] City assails this judgment as be-

---

1. In his oral pronouncement of judgment, according to the transcript, the trial judge said he

was remanding the matter for a new hearing by the commission, "if they desire," and if one is

ing an exercise of power that the court did not have. We agree and reverse.

## I

In his appeal to the district court, employee Pittman alleged that he was in charge of the Warrant Division of the Municipal Court Clerk's Office and his tenure was protected by the City of Tulsa's Civil Service Act. On September 4, 1976, Pittman received a letter dated September 1, signed by the municipal judge and the court clerk, and stating that he, Pittman, was dismissed as of September 1 because of (1) his past conduct record, (2) his failure to heed past disciplinary warnings, and (3) his being charged with the crimes of public drunkenness and assault on a police officer on August 31, 1976.

Pittman requested a hearing before the civil service commission and one was held on October 6 and 14, 1976 during which sworn testimony was presented, stipulations were made, and documentary evidence was submitted. The commission vacated the permanent termination and suspended appellant as an employee for six months. Pittman thought the lighter punishment still too harsh and lodged an appeal in the district court as authorized by law.

According to his journal entry, the district judge reviewed the file which contained a true copy "of all instruments and papers comprising the proceedings . . . before the Civil Service Commission . . . and . . . heard the arguments of counsel" before finding that the commission "committed error in the reception of illegally obtained evidence and that, therefore, [its] decision should be reversed because the Court cannot determine whether such evidence was the basis for such decision." And the court consequently reversed the commission's decision at the cost of the city.

## II

In support of its appeal to this court, city argues that the reversal was wrong because (1) the trial court was without a transcript of the testimonial evidence heard by the commission; (2) it was based upon a presumption that the commission may have been influenced by certain evidence alleged to have been illegally obtained, and (3) the commission's decision was based on ample competent evidence.

The first contention is without merit. Access to the district court was afforded Pittman by 12 O.S.1971 § 951. *In re White,* Okl., 355 P.2d 404 (1960). That statute, according to *White,* vests appellate jurisdiction in the district court to review the commission's decision, and that jurisdiction is invoked when an appeal is "perfected by filing in the district court a full and complete transcript of the proceedings had before the . . . [commission] including a transcript of the evidence." If such an appeal is perfected "the district court is limited to determinations (*sic*) whether an error of law was committed in the hearing and whether or not findings are supported by the evidence introduced." [2]

Pittman acknowledges the requisites of *White* but says the record before the district court in this case "was a sufficient transcript of the proceedings" even though it does not include a transcript of the testimony heard by the commission. He refers to *Robbins v. Oklahoma Alcoholic Beverage Control Board,* Okl., 461 P.2d 610 (1969) as authority for the rule that certification of a transcript by a court reporter is not essential to perfect a § 951 appeal. This, of course, is exactly what *Robbins* holds. Such knowledge, however, profits us little be-

---

held "they will not be allowed to introduce the telephone conversation memorandum relating . . . ." to an allegedly taped conversation between Pittman and a county prisoner April 10, 1973. The journal entry of judgment, however, contains no remand order.

**2.** Even though this state enacted a revised version of the Uniform State Administrative Pro-

cedures Act in 1963—75 O.S.1971 § 301 et seq.—which specifically excludes applicability to municipalities, this state's high tribunal has continued its adherence to the procedural requirements promulgated in *White. City of Sand Springs v. Colliver,* Okl., 434 P.2d 186 (1967).

cause here, unlike *Robbins,* there is no transcript of testimony at all, and certainly none certified by a commission official.

Finally, Pittman strongly condemns a rule which would require a recently discharged employee to hire a court reporter to transcribe all the testimony heard by the commission before he can appeal. Perhaps he has a point, but we are unaware of a case imposing such a requirement. To the contrary, *Robbins,* the one case cited by Pittman in support of his position, suggests that a transcript of proceedings before various boards and agencies need not be prepared, nor its correctness certified to, by a court reporter; and that certification by the agency's reporter and secretary is sufficient.

The record discloses that Pittman lodged his appeal in the district court simply by filing a petition in error October 25, 1976— some eleven days after the commission handed down its decision. Apparently, no attempt was ever made by Pittman to obtain or file a transcript of either the commission proceedings or the adduced testimony.

In its answer, city challenged the court's jurisdiction on the ground that no transcript of the proceedings accompanied the petition and in the alternative pleaded that the commission action was not founded on an error of law nor was it unsupported by sufficient evidence. To demonstrate the accuracy of its allegations, city attached a copy of the commission's minutes of its proceedings on October 6 and 14, 1976, a copy of that portion of the city charter establishing and empowering the commission, a copy of city's procedural manual relating to disciplinary actions, and a copy of the various exhibits offered to the commission by the parties. These exhibits included the following: correspondence between city officials and Pittman; a copy of a medical report; a copy of a 1974 city D.W.I. charge against Pittman and of instruments showing its disposition; a copy of

what was designated "Intelligence Memorandum" dated April 11, 1973 containing a transcription of a telephone conversation between Pittman and a county prisoner as "overheard" by a Tulsa County Deputy Sheriff; a copy of a police department internal intelligence report detailing results of an investigation growing out of the "overheard" telephone conversation; a copy of an arrest report dated August 28, 1976 detailing the officers' experience with Pittman shortly after midnight when they "found him passed out in an apparent state of intoxication on the parking lot" of an eastside club—The Twentieth Century Electric Company—and charging Pittman with public drunkenness, interfering with an officer, and assaulting a police officer; a copy of various mug shots, a copy of a county D.W.I. charge dated August 2, 1969 and later reduced to reckless driving; a copy of an information against Pittman dated September 1, 1976 accusing him of being drunk in a public place and committing an assault and battery upon a police officer together with other papers relating to the two charges.

Though in its literal sense, *White* appears to make the filing of a transcript of the proceedings a jurisdictional requirement, we think a common sense construction of the case invites us to consider it in context of its facts and the times and construe it in a manner reasonable enough to avoid absurdity, deprivation of appeal rights, and violation of the probable intendment of the high court. First off, we do not believe *White* intended that the filing of a complete transcript of agency proceedings be a prerequisite to invoking the district court's appellate jurisdiction but rather an obligation to be fulfilled before the appeal is perfected[3] to the extent necessary to render the agency decision reviewable.

There are several reasons for this. The last two decades have seen a rapid acceleration of efforts to simplify court appellate procedure both statutorily and by court

---

**3.** The verb to "perfect," according to Webster's Twentieth Century Unabridged Dictionary, 88 (2nd ed. 1964), means to finish or complete.

rule. It has long been that one appealing to the state supreme court, for instance, need file only "so much of the proceedings and evidence, . . . as may be necessary to present the errors complained of . . . ." 12 O.S.1961 § 957. In 1965, the legislature concluded that the only jurisdictional step in filing an appeal was the timely filing of a petition in error. 12 O.S.1971 § 990. The same statute ordained the state supreme court to establish rules of appellate procedure and this resulted in the promulgation of a series of simplifying rules in 1969. 12 O.S. Ch. 15, App. 2. Moreover, to prevent loss of one's appellate rights because of a technical misadventure, a statute was enacted in 1970 which required the making of prompt objections to errors committed in perfecting an appeal and if not so made the error was to be ignored. 12 O.S. 1971 § 991.

 Why then, in view of such clearly established public policy, should a narrow and restrictive view be taken of the *White* language in regard to the appellate procedure to be followed by those afforded the right of appellate review of a municipal agency's decree? We can think of no reason why it should. In our opinion, the record of the commission proceedings attached to city's answer was sufficient to satisfy the transcript requirements of *White*. And whether a transcript of testimony should be filed depends on whether one is needed for passing upon the errors complained of by the appealing party. And a determination of such necessity will, as we shall see, merge into a resolution of city's last two contentions.

### III

 Pittman's main complaint during his oral presentation to the trial court was that he was not afforded a fair and impartial hearing because illegally obtained inflammatory evidence infiltrated the proceeding and contaminated the commission's objectivity—namely, a transcript of a drug-related conversation between Pittman and a county prisoner allegedly taped or monitored by a deputy sheriff, together with a related intelligence memorandum prepared and filed by the Tulsa Police Department's internal security officers. Pittman did not contend in the trial court, nor does he now say, that the condemned evidence was the sole basis for finding him guilty of "committing acts on or off the job, which would bring embarrassment, distrust, or discredit to the City of Tulsa"—acts proscribed by governing employee rules—but only that it caused the commission "to impose a much more severe sentence than . . . ." it otherwise would have. To the contrary, Pittman's sole request of the trial court was to modify the six-month suspension "to sixty days or somewhere in that neighborhood." And here, appellee asks in his brief that we either affirm the trial court's judgment or modify it "so as to reduce the suspension from six months to sixty days." The trial court, of course, did not modify the penalty but, as we mentioned earlier, reversed it, not because of a lack of supporting evidence, but because illegally obtained evidence was received.

We have searched the record in vain for evidence to support the conclusion of the trial court that members of the commission were exposed to "illegally obtained" evidence. The transcript of the commission proceedings certainly does not furnish a foundation for the conclusion. All it reveals is that Pittman talked to a county prisoner on the telephone and a deputy sheriff in some way monitored the conversation. To render illegal the sheriff's efforts, it would have to have been shown by Pittman that the monitoring was without the consent of either conversant. 18 U.S.C. § 2511(1)(c); 21 O.S.1971 § 1757; *Pearson v. State*, Okl.Cr., 556 P.2d 1025 (1976). If indeed this fact was proved, it is not discernible from the minutes of the commission proceedings.

We hold the trial court reversibly erred in holding that illegally obtained evidence was laid before the commission.[4]

4. This conclusion, of course, obviates the need to determine the effect of exposing an administrative tribunal to illegally obtained evidence.

**344**

## IV

■ Nor can we find any basis for honoring Pittman's request to reduce the assessed penalty. The commission is charged with the responsibility of meting out punishment to wayward employees, and, if its findings of fact are supported by evidence and there is no significant error of law in connection with the penalty imposed, the trial court is powerless to disturb the commission's judgment. *In re White, supra.*

■ Here, quite apart from the alleged telephone conversation, there was an abundance of evidence to support the commission's findings, and, as we see it, had it not been for a fairly good job performance record, the commission likely would have upheld the employee's dismissal. Pittman's off-the-job problems began several years ago and drew several warnings from his superiors. In connection with the 1974 drunk driving charge,[5] Pittman wrote his superior that:

> "I am in receipt of your letter of reprimand dated October 29, 1974, which I do not deny deserving.
>
> "I deeply regret having allowed myself to be placed in such a position as to receive a reprimand . . . [and] having caused embarrassment to the office, and particularly to you, my supervisor and friend. You have been more than fair and understanding with me in all matters."

The monitored telephone call incident was indeed regrettable, but, in reading the various reports relating to it, we are left with considerable doubt as to the truth of the matter. Pittman wrote an explanatory letter admitting the call but denying the conversation went like the deputy sheriff said. Pittman's version tends to be, in some measure, corroborated by a later report concerning the results of a follow up investigation. We cannot believe that the commission attached undue significance to the alleged monitoring results under these circumstances.

The most damaging evidence against Pittman was his inexplicable indiscretion in allowing himself to become involved in a lamentable situation August 28, 1976 that resulted in his arrest for the crimes of "public drunk" and "assault and battery upon a police officer." The immediate reaction of his superiors upon receiving this disturbing information took the form of a dismissal letter. Pittman testified before the commission about the episode—so did the arresting officers and other personnel. There is no transcript of such testimony and we therefore have to presume it was sufficient to sustain the commission's findings and warrant the penalty imposed.

The record affords us no basis for holding that the six-month suspension is excessive or that the commission's decision otherwise resulted from legal error. The judgment of the trial court is therefore reversed and the commission's decree is affirmed.

BACON, P. J., and NEPTUNE, J., concur.

---

5. This was the second such charge. He was charged with D.W.I. August 4, 1969.